IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
Civil Action No. 1:11-cv-638

| | |
|---|---|
| MEDCOST BENEFIT SERVICES, LLC<br><br>     Plaintiff<br><br>v.<br><br>DAVITA INC. d/b/a BELDEN COMMUNITY DIALYSIS; THE QUALITY CASTINGS COMPANY; and CEDRIC ERVIN<br><br>     Defendants | **COMPLAINT** |

Now comes Plaintiff MEDCOST BENEFIT SERVICES, LLC ("MedCost"), and

files this complaint for a declaratory judgment pursuant to 28 U.S.C. § 2201(a), showing

the Court as follows:

Jurisdiction and Venue

1.      MedCost is a limited liability corporation organized and existing under the

laws of the State of North Carolina maintaining its principal office and place of business

in Winston-Salem, North Carolina.

2.      Defendant DAVITA INC. d/b/a BELDEN COMMUNITY DIALYSIS

("DaVita") is a corporation organized and existing under the laws of the State of

Delaware, maintaining its principal office and place of business in Colorado.

3.     Defendant THE QUALITY CASTINGS COMPANY ("Quality Castings") is a corporation organized and existing under the laws of the State of Ohio, maintaining its principal office and place of business in Ohio.

4.     Upon information and belief, Defendant CEDRIC ERVIN ("Ervin") is an individual residing in the State of Ohio.

5.     This action is one over which this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, because (a) MedCost and Defendants are citizens of different states, and (b) the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  In addition, the rights and obligations of the parties are governed under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (ERISA), and therefore, the Court has original federal question jurisdiction.

6.     Venue is appropriate in the Middle District of North Carolina pursuant to 28 U.S.C. § 1391(a).

Material Facts

7.     Quality Castings is the Plan Sponsor, Plan Administrator for and maintains an ERISA-governed employee health benefit plan ("the Plan") through which employees have access to discounted medical services by "in-network" medical providers.

8.     Pursuant to a Third Party Administrator Administrative Services Agreement ("ASA") between MedCost and Quality Castings, MedCost is the third party administrator for the Plan sponsored and maintained by Quality Castings.

9.     Under the terms of the ASA, MedCost performed "only ministerial duties on behalf of the Plan Administrator," and "shall not for any purposes be deemed an employee of [Quality Castings], the Plan Administrator, or a fiduciary of the Plan."

10.     Under the terms of the ASA, MedCost was required to "use ordinary care and reasonable diligence in accordance with Industry standards in the exercise of its powers and performance of its duties [t]hereunder."

11.     Under the ASA, Quality Castings granted to MedCost "the ability to make determinations on behalf of the Employer with respect to benefit payments under the Plan and to pay such benefits, but only within the guidelines set up by [Quality Castings] for the Plan, and further subject to the right of [Quality Castings] to review and modify any such determination. MedCost was authorized by Quality Castings and/or its authorized agents to act on behalf of Quality Castings and the Plan with regard to all matters alleged herein.

12.     The ASA provided that "[p]ayment of claims shall be made by [Quality Castings] from funds of [Quality Castings] by checks signed by [Quality Castings], and said checks shall be in a form mutually agreed upon by [MedCost] and [Quality Castings], upon a bank account, or accounts, established and maintained by [Quality Castings] for the purpose of payment of such claims."

13.     The ASA further provided that "[Quality Castings] agrees to indemnify [MedCost] and hold [MedCost] harmless against any and all loss, liability, damage,

expense, including reasonable attorneys' and accountants' fees or other costs or obligations, resulting from and arising out of claims, damages or lawsuits brought against [MedCost] in administering the Plan or to recover benefits under the Plan, unless such claim, liability, cost, loss, expense or damage directly and proximately results from the breach by the TPA of its obligations set forth in Section 7.05 hereof, or from gross negligence, intentional misdeeds or fraud by [MedCost] or its employees or agents.

14.     In February 2009, Ervin, a former employee of Quality Castings, initiated hemodialysis therapy at Belden Community Dialysis ("Belden"), which is owned and operated by DaVita.

15.     Ervin was an eligible participant in the Plan.

16.     As of January 1, 2009 or earlier, Quality Castings was part of a Payor group contracting with HealthSmart Payors Organization, Ltd. ("HealthSmart") to obtain discounted medical services for its employees from medical providers who participate in HealthSmart's Preferred Provider Network ("the Network").

17.     Belden Community Dialysis is a facility owned, managed, or affiliated with DaVita, and has been a participating provider in the Network since January 1, 2009, or earlier.

18.     Due to its status as a participating provider in the Network, Quality Castings and the Plan were entitled to a 35% discount from DaVita / Belden's billed rates for medical services provided to Plan participants.

19.    Despite the fact that DaVita / Belden was a participating provider in the Network, and that Quality Castings and the Plan were entitled to the aforementioned 35% discount, in February 2009, DaVita / Belden misrepresented to MedCost that it was not a participating provider in the Network, and thus, that its fees for medical services rendered to Ervin were not subject to an "in-network" discount.

20.    In reliance on the misrepresentation by DaVita / Belden that Belden was not an "in-network" provider, and to secure a discount for the Plan with regard to services provided by Belden to Ervin, MedCost executed a Single Patient Agreement ("SPA") with DaVita in March of 2009 as an authorized representative of the Plan and solely in its capacity as the Plan's third party administrator.  The Plan and/or Quality Castings or its authorized agents authorized MedCost to execute the SPA in its capacity as a third party administrator of the Plan.

21.    MedCost itself received no benefit in executing the SPA.  Moreover, it was fully understood by DaVita/Belden that MedCost was acting only as a third party administrator on behalf of Quality Castings and the Plan, and that the Plan was an employee benefit Plan governed by ERISA.

22.    Under the terms of the SPA, DaVita / Belden agreed to accept 85% of its billed charges for "covered services," which were to be treated as "in-network" benefits for Ervin.  Davita / Belden further agreed that Ervin would "not be responsible for the

difference between [DaVita / Belden's] billed charges and the agreed upon payment rates under [the] Agreement for Covered Services."

23.     Pursuant to the terms of the Plan and the SPA, MedCost paid benefits on behalf of the Plan for the claims submitted by Belden for services provided to Ervin from January 31, 2009 through August 1, 2009.

24.     In accordance with the ASA, MedCost released checks signed by Quality Castings as Quality Castings directed in writing, and prior to these disbursements, MedCost  advised Quality Castings in writing by fax or mail as to the total amount of funds so disbursed.

25.     Effective July 1, 2009, Quality Castings amended the Plan to impose a lifetime maximum benefit on "non-network" medical expenses of $100,000 with the intent to terminate the Single Patient Agreement and to treat the expenses from Belden / DaVita as out-of-network.

26.     By letter dated October 20, 2009, MedCost informed DaVita / Belden that the Plan was amended as of July 1, 2009, the total out-of-network claims paid for services rendered to Ervin had exceeded $100,000, and no further claims would be paid. Moreover, the letter expressly terminated the SPA in light of what appeared to be exhaustion of benefits payable under the Plan.  DaVita acknowledged such notice and amendment to the Plan and acknowledged that no further benefits would be payable

under the Plan or the SPA. DaVita "closed" its account for the Plan/MedCost relative to Cedric Ervin.

27.     Nevertheless, Belden continued to provide dialysis services to Ervin, and it subsequently submitted claims to MedCost for benefits under the Plan.

28.     All claims for Plan benefits incurred after September 1, 2009 were denied by MedCost on the grounds that the $100,000 lifetime maximum benefit for non-network services had been exhausted.

29.     DaVita submitted several appeals of MedCost's benefits determinations, taking the position that Belden is an in-network provider, and therefore, that claims for benefits under the Plan submitted by Belden are not subject to the Plan's non-network lifetime maximum benefit limitation of $100,000.

30.     In a letter to Quality Castings dated July 26, 2010, Dana Manton-Delaney, an Account Manager at DaVita, stated that she spoke with an employee of HealthSmart named "Renee" who: "accessed Belden as a network provider through The Quality Castings Company's Employer Group Quality Castings. Renee informed Dana that MedCost is not correct, and must process Belden's claims as an 'in-network' provider."

31.     In an email to MedCost dated June 30, 2010, Mike Mitchell, Vice President of Business Development at HealthSmart, stated the following:

> Thanks for your patience as we investigated the contract terms with Beldon [sic] Community Dialysis. The Beldon [sic] contract was, in fact, effective with HealthSmart thru a national Davita contract on 1/1/09. Claims were

originally repriced as non-panel due to a monthly provider file load from Davita that did not include Beldon [sic] Community Dialysis.

Our system was later updated to include the Beldon [sic] location as part of the Davita network. We are not clear on why these claims were re-submitted for repricing, but our expectation is that the provider re-submitted the claims once network status was confirmed.
Thru my de-briefings with the provider relations staff, there was no retro-acitvation of the specific claims in question for Quality Castings. Rather, it was an updated file load from Davita and an attentive provider group aware of the HealthSmart/Davita contractual relationship.

I hope this provides clarity relative to our contractual relationship with Davita and Beldon [sic] Community Dialysis.

32. Since DaVita / Belden's claims for benefits under the Plan have been denied, DaVita / Belden has asserted that MedCost is directly liable under the SPA for any unpaid bills for dialysis services rendered to Ervin.

33. MedCost denies that it has any liability to DaVita / Belden under the SPA or otherwise.

34. In its role as third party administrator of the Plan, and in accordance with the ASA, MedCost has determined that DaVita / Belden was an in-network medical provider, and therefore, the denial of benefits based on the Plan's non-network lifetime maximum benefit limitation of $100,000 was incorrect.

35. Nevertheless, Quality Castings has refused to authorize payment of any further Plan benefits to DaVita / Belden, invoking the non-network lifetime maximum benefit limitation of $100,000.

36.     There are actual issues in controversy, the matters are definite and concrete,

the parties' positions are defined and adversarial, and the issues are susceptible to judicial

determination.

Count I

Declaratory Judgment<br>Invalidity and/or Unenforceability of the Single Patient Agreement

37.     MedCost adopts and incorporates by reference paragraphs 1 through 36 of

its complaint, the same as if herein set out verbatim.

38.     MedCost is entitled to a declaration that the SPA was void ab initio or is

voidable, invalid, and unenforceable on at least the following bases:

Mutual Mistake of Fact

(a)     Prior to executing the SPA, DaVita / Belden represented that it was

not an "in-network" medical provider.  In fact, DaVita / Belden was an "in-network"

provider as part of the HealthSmart Network, which entitled Quality Castings to a 35%

discount from DaVita/Belden's billed charges.  MedCost and DaVita/Belden were

mutually mistaken with regard to DaVita/Belden's status as an "in-network" medical

provider.  MedCost acted reasonably in relying on DaVita/Belden's representation, and it

could not have discovered the truth regarding DaVita/Belden's status through the

exercise of reasonable care.  But for this mutual mistake of fact, the parties would not

have executed the SPA, which purported to provide Quality Castings with only a 15%

discount from DaVita/Belden's billed charges.  Accordingly, because the SPA was

executed based on a mutual mistake of fact, and because the SPA would not have been

executed but for the mutual mistake of fact, the SPA is invalid.

### Lack of Consideration

(b)     MedCost received no bargained-for benefit by executing the SPA.

MedCost received no consideration for executing the SPA.  MedCost is entitled to a

declaration that the SPA is invalid for failure of consideration.

### Failure to Agree as to Material Terms

(c)     In executing the SPA, MedCost and Davita / Belden failed to agree

and/or reach a meeting of the minds as to the material terms of the SPA, including but not

limited to price.  MedCost is entitled to a declaration that the SPA is invalid and

unenforceable due to failure of the parties to agree on material terms.

### Frustration of Purpose and/or Impossibility

(d)     In executing the SPA, MedCost and DaVita/Belden knew that

Cedric Ervin was a participant in the Quality Castings Plan, and it was assumed that

benefits would continue to be payable under the Quality Castings Plan.  When the

Quality Castings Plan was amended to exclude coverage for the services provided by

DaVita/Belden, the purpose of the SPA was frustrated.  Such frustration of purpose bars

any claim for payment for services rendered to Cedric Ervin for which benefits are not

payable under the Quality Castings Plan

<u>Failure of Condition Precedent.</u>

(e)     In executing the SPA, MedCost and DaVita/Belden knew that

Cedric Ervin was a participant in the Quality Castings Plan, and it was understood that

any obligation under the SPA was conditioned on benefits being payable under the

Quality Castings Plan with regard to the services rendered to Cedric Ervin by

DaVita/Belden.  With regard to any claim for payment for services rendered to Cedric

Ervin for which benefits are not payable under the Quality Castings Plan, such claim fails

for failure of a condition precedent.

<u>Count II</u>

<u>Declaratory Judgment</u>
<u>No Liability under the Single Patient Agreement Due to</u>
<u>Disclosed Agency</u>

39.     MedCost adopts and incorporates by reference paragraphs 1 through 38 of

its complaint, the same as if herein set out verbatim.

40.     In executing the SPA, MedCost was acting as an agent for Quality Castings

and the Plan, and solely in its capacity as the Plan's third party administrator.

41.     MedCost fully disclosed its agency in executing the SPA.  DaVita

understood that MedCost was only a third party administrator of the Plan.

42.     MedCost is entitled to a declaration that it is not individually liable under

the SPA due its disclosed agency.

## Count III

### Declaratory Judgment
### Proper Termination of the Single Patient Agreement

43.     MedCost adopts and incorporates by reference paragraphs 1 through 42 of

its complaint, the same as if herein set out verbatim.

44.     By letter dated October 20, 2009, DaVita / Belden received notice of

Quality Castings' amendment of the Plan to impose a lifetime maximum benefit on "non-

network" medical expenses of $100,000, and express notice that the SPA was terminated

in light of what appeared to be exhaustion of benefits payable under the Plan.

45.     DaVita / Belden did not object to the termination of the SPA, but continued

to provide medical services to Ervin despite being on notice that the charges therefore

were not subject to payment under the Plan or the SPA.

46.      MedCost is entitled to a declaration that the SPA was properly terminated

and is not enforceable.

## Count IV

### Declaratory Judgment
### Medical Services Provided Pursuant to the Single Patient Agreement
### Were "In-Network" Services Subject to Payment Under the Plan

47.     MedCost adopts and incorporates by reference paragraphs 1 through 46 of

its complaint, the same as if herein set out verbatim.

48.     The SPA was executed by MedCost and DaVita / Belden with full

knowledge that Cedric Ervin was a participant in the Plan, that the Plan was governed by

ERISA, that MedCost was a third party administrator for the Plan, and that with the exception of any requirement to obtain verification of eligibility or authorization, any payment obligation under the SPA was subject to the terms of the Plan for medical services provided by DaVita / Belden to Ervin.

49.      MedCost is entitled to a declaration that any payment obligation under the SPA was subject to the terms of the Plan for medical services provided by DaVita / Belden to Ervin.

Count V

Declaratory Judgment
Medical Services Provided by DaVita / Belden to Cedric Ervin Prior to May 2010
are Payable Under the Plan

50.      MedCost adopts and incorporates by reference paragraphs 1 through 49 of its complaint, the same as if herein set out verbatim.

51.      Notwithstanding the execution of the SPA, DaVita / Belden was, in fact, an "in-network" medical provider whose services provided to Ervin were payable under the Plan until May 2010, when the Plan was amended to exclude all services provided by DaVita from coverage under the Plan.

52.      MedCost is entitled to a declaration that all medical services provided by DaVita / Belden to Ervin prior to May 2010 are payable under and in accordance with the terms of the Plan.

## Count VI

### Declaratory Judgment
### Indemnification from Quality Castings

53.    MedCost adopts and incorporates by reference paragraphs 1 through 52 of its complaint, the same as if herein set out verbatim.

54.    Under the terms of the ASA, Quality Castings is required to indemnify and hold MedCost harmless against any and all loss, liability, damage, expense, including reasonable attorneys' and accountants' fees or other costs or obligations, resulting from and arising out of claims, damages or lawsuits brought against MedCost in administering the Plan or to recover benefits under the Plan.

55.    MedCost entered into the SPA on behalf of the Plan and to the benefit of Quality Castings as Plan Administrator and sponsor, and in no way breached its obligations set forth in the ASA, or otherwise committed gross negligence, intentional misdeeds, or fraud in entering into the SPA.

56.    Insofar as MedCost may be directly liable for payment of expenses associated with medical services rendered to Ervin by DaVita / Belden due to entering into the SPA, MedCost is entitled to a declaration that Quality Castings shall indemnify and hold MedCost harmless for such liability.

## Count VII

### Declaratory Judgment
### DaVita / Belden's Claims for Payment are Claims for Benefits
### Under the Plan and are Governed by ERISA

57.    MedCost adopts and incorporates by reference paragraphs 1 through 56 of its complaint, the same as if herein set out verbatim.

58.    DaVita / Belden's claims for payment for medical services rendered to Ervin concern its right to payment, not the proper rate of payment.

59.    DaVita / Belden claims to be entitled to payment for such services as an "in-network" medical provider.

60.    DaVita / Belden's claims for payment for medical services rendered to Ervin are claims for benefits under the Plan which are governed by ERISA.

61.    Accordingly, MedCost is entitled to a declaration that DaVita / Belden's claims for payment for medical services rendered to Ervin are governed by ERISA, and that any claim for benefits or payments beyond those payable under the Plan and ERISA are preempted by ERISA.

WHEREFORE, Plaintiff MEDCOST BENEFIT SERVICES, LLC prays:

(a)    That judgment be entered in its favor;

(b)    That the Court enter judgment declaring that the Single Patient Agreement is void ab initio, voidable, invalid, unenforceable and properly terminated.

(c)     That the Court enter judgment declaring that DaVita / Belden's claims for payment for medical services rendered to Ervin are governed by ERISA and payable under the terms of the Plan, and that MedCost does not have liability for any claims not payable under the Plan;

(d)     That the Court enter judgment declaring that MedCost is not individually liable under the Single Patient Agreement due its disclosed agency;

(e)     That the Court enter judgment declaring that MedCost is entitled to indemnification from Quality Castings with regard to any liability established against as to DaVita/Belden for services rendered to Cedric Ervin;

(f)     That it be awarded its reasonable attorney's fees and costs associated with the bringing of this complaint;

(g)     A trial by jury as to all matters so triable; and

(h)     That it have such other and further relief to which it is entitled.

This 12th day of August 2011.

/s/ Richard A. Coughlin
Richard A. Coughlin
N.C. State Bar No. 19894
rick.coughlin@smithmoorelaw.com

*Attorney for Plaintiff*

OF COUNSEL:

SMITH MOORE LEATHERWOOD LLP
300 North Greene Street, Suite 1400
PO Box 21927 (27420)
Greensboro, NC 27401
Telephone: 336.378.5200
Facsimile: 336.378.5400